UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GRANT COUNTY BLACK SANDS IRRIGATION DISTRICT, a Washington municipal corporation, and WILLIAMSON LAND COMPANY, INC., a Washington corporation,

Plaintiffs,

v.

UNITED STATES OF AMERICA; BUREAU OF RECLAMATION; and J. WILLIAM McDONALD, in his capacity as the Regional Director of the PACIFIC NORTHWEST REGION OF THE BUREAU OF RECLAMATION,

Defendants.

NO. CV-03-0278-EFS

**ORDER DENYING PLAINTIFFS' MOTION FOR NEW TRIAL UNDER RULE 59(e) AND FOR RELIEF UNDER RULE 60(b) AND RULING ON OTHER PENDING MOTIONS**

Before the Court, without oral argument, is Plaintiffs Grant County Black Sands Irrigation District ("GCBSID") and Williamson Land Company, Inc.'s Motion for New Trial Under Rule 59(e) and for Relief under Rule 60(b), (Ct. Rec. 66).[1] Previously, the Court ruled the "Agreements for

[1] In their reply, Plaintiff also asked for oral argument pursuant to Local Rule 7.1(h)(2). After reviewing the submitted material, and in light of the Court's earlier proceedings, the Court finds oral argument

License to Use Artificially Stored Ground Water Tributary to Potholes Reservoir--Quincy Ground Water Subarea" ("License Agreements") were short-term contracts to furnish water for irrigation purposes under 43 U.S.C. § 485h(e). Plaintiffs contend this ruling is clearly erroneously and move for a new trial or for an order setting aside the Court's judgment entered on December 20, 2004, on the grounds: (1) there is newly discovered evidence, consisting of a 1997 letter from Mr. Coles and a 1981 stipulation entered into by the United States in litigation with the three other Quincy area irrigation districts, which shows the United States was at that time characterizing the License Agreements with Plaintiffs as long-term repayment contracts and, thus, it would be inequitable to allow Defendants to change their position,[2] (2) the artificially stored ground water (ASGW) License Agreements are repayment contracts entitled to crediting for repayment from the United States Bureau of Reclamation because the Secretary only had five years to impose toll charges on the ASGW and then the License Agreements were to be administered as long-term repayment contracts, pursuant to 43 U.S.C. §

---

unnecessary on the instant motion. LOCAL RULE 7.1(h)(3).

[2] After the United States pointed out the "newly discovered evidence," i.e. the 1997 letter from Mr. Coles and the 1981 stipulation, was actually provided to the Plaintiffs during the Rule 26(a) disclosure process and were utilized by Plaintiffs' former counsel at a deposition on November 19, 2004, Plaintiffs withdrew the proffered documents as "new evidence," but still utilize them to argue that the Court made an error in law.

461 (§ 4 of the 1902 Reclamation Act), 43 U.S.C. § 485f (§ 7(b) of the Reclamation Project Act of 1939), and 43 U.S.C. § 469 (§ 4 of the Reclamation Extension Act of 1914), (3) there are material issues of fact, such as whether the Plaintiffs were given sole priority to the ASGW, which preclude summary judgment for the United States, and (4) state officials have no power to disrupt the United States' internal project water supply under the ASGW License Agreement program and/or to disrupt service contracts and determinations regarding use of the project waste, seepage, and return flow ("WSRF") entitled to the United States pursuant to its Columba River diversion rights.

Defendants oppose the motion, contending the Court's previous order is consistent with Reclamation law, and seek Federal Rule of Civil Procedure 11 sanctions as a result of Plaintiffs claiming evidence was not proffered to them.[3] As explained below, the Court finds Reclamation law allowed the Secretary to enter into short-term contracts to furnish water for irrigation purposes under 43 U.S.C. § 485h(e); thus, the Court's December 20, 2004, order was not clearly erroneous and grounds do not exist under Federal Rules of Civil Procedure 59(e) or 60(b) to amend the Order or Judgment.

**A. Repayment Contracts**

Plaintiffs maintain the United States must credit the construction repayment charge of $1.70 per acre, or $85.00 per acre amortized over

---

[3] Under the circumstances arising out of the retention of new counsel and the filing deadlines in place, the Court finds Rule 11 sanctions are unwarranted.

fifty years, to ASGW License Agreement holders because all 43 U.S.C. § 485h(e) contracts are repayment contracts and, furthermore, that all contracts entered into for the Columbia Basin Project must be repayment contracts. Therefore, Plaintiffs contend the Court's previous ruling that the License Agreements are short-term contracts to furnish water under § 485h(e) was clearly erroneous.

Section 485h(e) of Title 43 provides:

> In lieu of entering into a repayment contract pursuant to the provisions of subsection (d) of this section to cover that part of the cost of the construction of works connected with water supply and allocated to irrigation, the Secretary, in his discretion, may enter *into either short- or long-term contracts to furnish water for irrigation purposes*. Each such contract shall be for such period, not to exceed forty years, and at such rates as are in the Secretary's judgment will produce revenues at least sufficient to cover an appropriate share of the annual operation and maintenance cost and an appropriate share of such fixed charges as the Secretary deems proper, due consideration being given to that part of the cost of construction of works connected with water supply and allocated to irrigation; and shall require payment of *said rates* each year in advance of delivery of water for said year. In the event such contracts are made for furnishing water for irrigation purposes, the costs of any irrigation water distribution works constructed by the United States in connection with the new project, new division of a project, or supplemental works on a project, shall be covered by a repayment contract entered into pursuant to subsection (d) of this section.

43 U.S.C. § 485h(e) (emphasis added).[4] By its own terms, § 485h(e)

---

[4] Previously, both parties agreed the last sentence of § 485h(e) is inapplicable to the issues before the Court. However, upon further review, the Court finds analysis of this provision important to a thorough analysis. The License Agreements were entered into to furnish water for irrigation purposes. "Irrigation water" is defined as "water made available for agricultural purposes from the operation of a

provides the Secretary with discretion to enter into agreements other than a repayment contract under § 485h(d). It allows the Secretary to enter into "contracts to furnish water for irrigation purposes." Notably, this provision does not state "*[repayment]* contracts to furnish water for irrigation purposes." Contracts under § 485h(d) require payment of "rates," which in the Secretary's judgment will cover the cost of operation and maintenance cost and "an appropriate share of fixed charges . . . due consideration being given to that part of the cost of construction of works connected with water supply and allocated to irrigation." The Court infers from the absence of the term "repayment" that contracts under § 485h(e) need not be repayment contracts.

As the Court stated in its December 20, 2004, Order, "contract" is defined as "any repayment or water service contract between the United States and [any individual or legal entity established under State law

---

reclamation project facilities pursuant to a contract with the Secretary." 43 U.S.C. § 390bb(5). The Columbia Basin Project made the ASGW available to the GCBSID landowners in an atypical fashion. However, at the time the License Agreements were entered into, the Columbia Basin Project had already been constructed and it was no longer a "new project." The GCBSID was a new division; however, the Court is unaware of evidence establishing that there were "costs of any irrigation water distribution works constructed by the United States in connection with the . . . new division of a project." Therefore, the last sentence does not apply.

which has entered into a contract or is eligible to contract with the Secretary for irrigation water] providing for the payment of construction charges to the United States including normal operation, maintenance, and replacement costs pursuant to Federal reclamation law." 43 U.S.C. § 390bb(1)-(2). This definition of contract recognizes that both repayment and water service contracts are to "provid[e] for the payment of construction charges to the United States including normal operation, maintenance, and replacement costs." The Court finds the definition of "contract" is consistent with a finding that § 9(e) contracts can include "water service" contracts.

Section 485h(e) is located in a subchapter entitled, "Payment of Construction Charges." The Court finds the placement of this section consistent with such a subchapter as § 485h(d) applies to repayment contracts, and § 485h(e) provides the Secretary with discretion to enter into a water service contract, the rates for which must take into account fixed costs, due consideration being given to the cost of construction of works. Accordingly, the Court finds a ruling that contracts under § 485h(e) need not be repayment contracts is consistent with the structure of this subchapter. Furthermore, the Court's ruling is consistent with 43 U.S.C. § 485h(f), which states:

> No less than sixty days before entering into or amending any repayment contract *or any contract for the delivery of irrigation water* (except any contract for the delivery of surplus or interim irrigation water whose duration is for one year or less) the Secretary shall--[provide public notice of proposed amendments and opportunity for comment].

43 U.S.C. § 485h(f) (emphasis added). Section 485h(f) recognizes the

Secretary can enter into two types of contracts: a repayment contract and a contract for delivery of irrigation water.

Additionally, Plaintiffs cite to the following Reclamation statutes in support of their argument that the License Agreements are repayment contracts: 43 U.S.C. § 461, 43 U.S.C. § 469, 43 U.S.C. § 485f, 43 U.S.C. § 485j, and 43 U.S.C. § 485h-4. The Court will analyze these provisions individually and then discuss their cumulative impact.

Section 461 is entitled, "Determination of construction charges generally," and it provides:

> The construction charges which shall be made per acre upon the entries and upon lands in private ownership which may be irrigated by the waters of any irrigation project shall be determined with a view of returning to the reclamation fund the estimated cost of construction of the project, and shall be apportioned equitably.

43 U.S.C. § 461. This provision does not mandate that all irrigation agreements which charge for construction costs be repayment contracts, but merely requires, when construction charges are imposed, such charges must be apportioned equitably and with "a view of returning to the reclamation fund the estimated cost of construction of the project."

The next statute cited by Plaintiff, 43 U.S.C. § 469, states:

> No increase in construction charges shall, after August 13, 1914, be made, after the same have been fixed by public notice, except by agreement between the Secretary of the Interior and the majority of the water-right applicants and entrymen to be affected by such increase, whereupon all water-right applicants and entrymen in the area proposed to be affected by the increased charge shall become subject thereto. Such increased charge shall be added to the construction charge and payment thereof distributed over the remaining unpaid installments of construction charges: *Provided,* That the Secretary of the Interior, in his discretion, may agree that such increased construction charge shall be paid in additional annual installments, each of which shall be at least equal to the amount of the largest installment as fixed for the project by the public notice theretofore issued. And such additional

> installments of the increased construction charge, as so agreed upon, shall become due and payable on December 1 of each year subsequent to the year when the final installment of the construction charge under such public notice is due and payable: *Provided further*, That all such increased construction charges shall be subject to the same conditions, penalties, and suit or action as provided in sections 478, 480, and 481 of this title.

43 U.S.C. § 469. Plaintiff maintains this section prohibits the Secretary from causing construction charges to exceed the equitably allocated construction charge set by the public notice on the Columbia Basin Project being $85.00 per acre. This may be correct; however, this section's requirements do not correlate to a finding that all § 485h(e) contracts must be repayment contracts. The statute simply limits the ability of the Secretary to increase construction charges.

Plaintiffs also cite to Section 7(b) of the Reclamation Act of 1939, or 43 U.S.C. § 485f, in support of their proposition that the License Agreements are repayment contracts. Plaintiffs maintain this section applies to the Columbia Basin Project and constrains the Secretary to a maximum five-year development period in which water rental or utility-type toll charges can be assessed against ASGW License Agreement holders. The Court disagrees with Plaintiffs' interpretation of this statute. Section 485f(b) specifically provides:

> **New projects or projects under construction; public lands; development periods:**
>
> For any project, division of a project, development unit of a project, or supplemental works on a project, under construction on August 4, 1939, or for which appropriations had been made, and in connection with which a repayment contract had not been executed, allocations of costs may be made in accordance with the provisions of section 485h of this title and a repayment contract *may be negotiated, in the discretion of the Secretary*, (1) pursuant to the authority of subsection (a) of this section or (2) in accordance, *as near as may be*, *with the provisions in section 485h(d) or 485h(e) of this title*. In connection

> with any such project, division, or development unit, on which the majority of the lands involved are public lands of the United States, the Secretary, prior to entering into a repayment contract, may fix a development period for each irrigation block, if any, of not to exceed ten years from and including the first year in which water is delivered for the lands in said block: *Provided*, That in the event a development period is fixed prior to execution of a repayment contract, execution thereof shall be a condition precedent to delivery of water after the close of the development period. During any such development period water shall be delivered to the lands in the irrigation block involved only on a toll-charge basis, at a charge per annum per acre-foot to be fixed by the Secretary each year and to be collected in advance of delivery of water. Pending negotiation and execution of a repayment contract for any other such project, division, or development unit, water may be delivered for a period of not more than five years from August 4, 1939, on the same toll-charge basis. Any such toll charges collected and which the Secretary determines to be in excess of the cost of operation and maintenance during the toll-charge period shall be credited to the construction cost of the project in the manner determined by the Secretary.

*Id.* (emphasis added.) Based on the use of the terms "may" and "discretion," the Court finds the Secretary is not required by statute to enter into a repayment contract. The Secretary may choose to negotiate a repayment contract "in accordance, as near as maybe, with the provisions of section 485h(d) or 485h(e)." The Court finds the phrase "as near as may be" equivalent to "as nearly as may be done." Such a finding does not alter the Secretary's clear ability under § 485h(e) to enter into a contract to furnish water for irrigation purposes. Because the License Agreements are not repayment contracts, but rather simply contracts to furnish water, the toll-charge five-year limitation is not applicable.

In addition, Plaintiffs point to the requirement in 43 U.S.C. § 485h-4 that "the right to use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated and beneficial use shall be the basis, the measure, and the limit of the right." The Court

concludes the mere fact that the water rights obtained by the License Agreement land owners are appurtenant to the land does not alter the Court's conclusion that the Secretary is provided with the discretion under § 485h(e) to enter into a contract to furnish water for irrigation purposes.

Plaintiffs also argue 43 U.S.C. § 485j preserves and makes all previous provisions of Reclamation law, including § 4 of the 1902 Reclamation Act (43 U.S.C. § 461) and § 4 of the Reclamation Extension Act of 1914 (43 U.S.C. § 469) applicable to § 485h(e) contracts. Section 485j does provide, "[t]he provisions of previous Acts of Congress not inconsistent with the provisions of this subchapter shall remain in full force and effect." Accordingly, the Reclamation statutes are to be read in their entirety. After reviewing the statutes cited by Plaintiffs, the Court concludes Reclamation law does not mandate that all § 485h(e) contracts be repayment contracts.

As discussed above, the Court finds these statutes individually do not require the Secretary to enter into a repayment contract under 43 U.S.C. § 485h(e). Therefore, the Secretary had the discretion to enter a contract to furnish water under § 485h(e) that covered an appropriate amount of fixed costs and operation and maintenance. Accordingly, the Plaintiffs' motion is denied in part.

In the alternative, Plaintiffs argue the Secretary did not have the discretion to enter into "contracts to furnish irrigation water" because all Columbia Basin Project irrigation contracts were required to be repayment contracts, citing to 16 U.S.C. § 835. Section 835 provides:

> In addition to the primary purposes for which the Grand Coulee Dam project (hereafter known as the Columbia Basin project and

> herein called the 'project') was authorized under the provisions of the Act of August 30, 1935 (49 Stat. 1028), the project is hereby authorized and reauthorized as a project subject to Reclamation Project Act of 1939; and the provisions of each of those two Acts shall govern repayment of expenditures and the construction, operation, and maintenance of the works constructed as a part of the project.

The Court does not find this section requires the Secretary to enter into repayment contracts with Columbia Basin Project landowners. Rather, § 835 simply mandates that the Reclamation Acts are to "govern repayment of expenditures and the construction, operation, and maintenance of the works constructed as a part of the project." Section 485h(e) also requires the Secretary to consider such expenses when determining the rates to charge for contracts to furnish irrigation water. Therefore, a contract entered into pursuant to § 485h(e) satisfies § 835 requirements.

For the above reasons, the Court finds its previous Order correct, and Plaintiffs' motion is denied in part.

**B. Wording of License Agreements**

In the December 20, 2004, Order, the Court analyzed the wording of the License Agreements and compared such, and the rates charged therein, to the definition of repayment contract and to the three repayment contracts entered into with the districts. Ultimately, the Court concluded the License Agreements were not repayment contracts but rather short-term contracts to furnish irrigation water. After reviewing the above-statutes cited to by Plaintiff, in connection with the "new" evidence and Plaintiffs' "principal" argument, the Court finds its previous interpretation of the License Agreements correct. Therefore, the Plaintiffs' motion is denied in part.

///

**C. Columbia Basin Project WRSF**

Pursuant to the 1968 district contracts and the Stipulation between the United States and the districts, the districts can only use the Project's waste, seepage, and return flow ("WRSF") water which the United States does not need to fulfill its ASGW License agreement commitments. Therefore, Plaintiff submits there exist significant and material disputed facts as to water supplies available to the ASGW License Agreement program, especially since the United States approved the use of ASGW WRSF water on 30,400 acres of district water service contracts.

Upon review of the submitted material, the Court concludes the fact that the United States has currently approved the use of ASGW WRSF water on approximately 30,400 acres does not influence the legal question of whether the Secretary had the discretion to enter into contracts to furnish irrigation water under 43 U.S.C. § 485h(e). Accordingly, as discussed above, the wording of the License Agreements establish that the Secretary chose to exercise his discretion under § 485h(e) to enter into short-term contracts to furnish irrigation water. Thus, Plaintiffs' motion is denied in part.

**D. State Officials' Power to Disrupt the United States' Project**

Plaintiffs submit Washington state officials have no power to disrupt the United States' internal project water supply contracts under the ASGW License Agreement program. Therefore, Plaintiffs argue Defendants' argument that Washington has control over the Project's WRSF water is a red herring and, thus, the decisions regarding how the Columbia Basin Project return flows are used are exclusively the province of the

Secretary of the Interior and Reclamation that must be made pursuant to federal Reclamation law.

Similar to the Court's conclusion above regarding the use of the ASGW WRSF water, the Court concludes the Secretary had the discretion to enter into a License Agreement that was subject to the terms and conditions of a state permit. Thus, the wording of the License Agreements make it clear the Secretary exercised his discretion to enter into a contract to furnish water for irrigation purposes. Therefore, Plaintiffs' motion is denied in part.

**E. Judicial Estoppel**

Plaintiffs maintain the United States is estopped from contending that the License Agreements are not repayment contracts because (1) the United States litigated against the Quincy, South, and East Columbia Basin Irrigation Districts regarding whether the License Agreements were independent repayment contracts and the United States received a benefit from the parties' settlement, (2) the Columbia Basin Project Manager stated in a 1977 letter that the ASGW licensing program was an integral part of the Project, and (3) the doctrines of res judicata and collateral estoppel apply because in *Flint v. United States*, 906 F. 2d 471 (9th Cir. 1990), the Ninth Circuit determined that the license agreements were section 9(e) repayment contracts.

First, as the Court previously stated in its December 20, 2004, Order, the Ninth Circuit in *Flint v. United States*, 906 F. 2d 471 (9th Cir. 1990), was not asked to specifically determine whether the License Agreements are short- or long-term contracts or whether they constitute "repayment contracts" or "waters service contracts." Therefore, the Ninth

Circuit's *dicta* describing the License Agreements as § 9(e) contracts does not bind this Court to a finding that the License Agreements are long-term or that they are repayment contracts.

In 1978, the United States filed suit in the United States District Court for the Eastern District of Washington, No. C-78-74, against the Quincy District. Following, the East and South Districts intervened and the action was settled by Stipulation on February 12, 1981. Paragraph 5 of this stipulation states,

> (5) As a result of the construction of irrigation facilities by the United States, and the operation and maintenance of the irrigation system to deliver water for the farming of lands within the Columbia Basin Project, a large body of Project groundwater was created within an area now designated as the Quincy Groundwater Subarea. Said Project irrigation facilities were designed and constructed for the purpose of recapturing the Project underground water in the Quincy Groundwater Subarea so that it would not be dissipated by natural waste and so that it could be used again as a part of the Project water supply and under Water Service Contracts and Groundwater licenses and to supply water to Potholes Reservoir.

Paragraph 6 recognized that the "utilization of the [ASGW] by landowners within the Project without payment of an appropriate share of the costs of construction and annual operation and maintenance costs adversely impaired the contractual rights existing between the United States and the Defendant irrigation districts." Also, the parties agreed, within paragraph 7:

> Federal reclamation law mandates that users of waters of a federal reclamation project must pay an appropriate share of the costs of construction of the Project and an appropriate share of the annual costs of operating and maintaining the Project irrigation system. In 1967, the United States, the State of Washington and the Defendant Quincy District entered into a Memorandum of Understanding which provided for the study and establishment of the Quincy Groundwater Subarea and further provided that the United States would issue temporary permits for the utilization of Project groundwaters upon the payment of a per acre charge by the landowners for the withdrawal and

> utilization of said underground waters. Said per acre charge was divided into two components, namely, a construction component and an O&M component. The construction component was designed to reimburse the United States for an appropriate share of its costs of construction of the Project, and the O&M component was designed to reimburse the parties for an appropriate share of their respective costs of operation and maintenance of the Reserved Works and Transferred Works.

The Stipulation further provided that the Bureau would appropriately divide up, between the Quincy, East, and South irrigation districts, the operation and maintenance component and the "construction component" received from the License Agreement holders.

Plaintiffs claim the United States argued, within the 1975 case, the License Agreements were repayment contracts. However, the Court does not have evidence before it establishing such. Rather, the only evidence before this Court regarding this 1975 case was the Stipulation entered into by the parties. The Court finds the terms of the Stipulation are consistent with the United States' position that the License Agreements are short-term contracts to furnish irrigation water. As stated above, 43 U.S.C. § 485h(e) allows the Secretary to fashion a rate to cover the fixed cost of a project, due regard being given to the construction costs. This is precisely what the Stipulation states as well. Therefore, the Court determines the United States is not judicially estopped to argue that the License Agreements are not repayment contracts, and Plaintiffs' motion is denied in part.

Next, Plaintiffs argue Project Manager James Cole's letter dated December 27, 1977, evidences that the United States treated the ASGW licensing program as permanent and integral part of the Project and, therefore, the United States is judicially estopped from arguing that the License Agreements are not repayment contracts. The letter stated:

> It has been determined that revenues received since the January 8, 1975 [sic] order, from the ground water licensing program in the Quincy Ground Water Subarea must be classified as *collections for providing irrigation water service* with water which is an integral part of the Project as a part of the Project plan. They are not "miscellaneous revenues" . . . "accruing from incidental activities in connection with the operation and maintenance of the project works" as contemplated by Article 51(a) of the repayment contracts. Under Reclamation law, the revenues are to be retained by the United States for deposit into the Reclamation Fund as partial recovery of the cost of constructing the Project, with certain exceptions described later on. While a segment of the charge to ground water licensees is called an "O&M component," no relationship exist between actual costs of operating the Project and the amount so labeled.
>
> Accordingly, revenues received by the United States under the licensing program for use of Project artificially stored ground water in the Quincy Ground Water Subarea, under the present licensing program beginning in 1975, will be deposited in the Reclamation Fund as a return to the United States of a portion of its cost of constructing the Project, less amounts equal to actual costs in connection with the licensing program incurred by the Bureau and the Columbia Basin Irrigation Districts, and also less an amount properly allocable to the cost of operation and maintenance of the Project Reserved Works.

(emphasis added.) Mr. Cole did use the term "integral," however, the term "permanent" was not used when describing the ASGW licensing program. Furthermore, Mr. Cole identified the License Agreement payments as "collections for providing irrigation water service;" the use of this phrase is again consistent with the United States' position that the License Agreements are not "repayment contracts." The Court has previously discussed the License Agreements' construction rate is not inconsistent with a finding that the License Agreements are not repayment contracts. Accordingly, Plaintiffs' motion is denied in part.

**F. Conclusion**

For the reasons given above, the Court finds its December 20, 2004, Order ruling that the License Agreements are short-term contracts to

furnish irrigation water under 43 U.S.C. § 485h(e) is not erroneous and, thus, the December 20, 2004, Order remains in effect, as supplemented herein. Accordingly, the Court concludes no genuine issues of material fact exist and, thus, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for New Trial Under Rule 59(e) and for Relief under Rule 60(b), **(Ct. Rec. 66)**, is **DENIED.** The Court's Order and Judgment entered on December 20, 2004, and as supplemented by the instant Order, control.

2. The United States' Motion to Withdraw Motion for Summary Judgment on All Claims, **(Ct. Rec. 63)**, is **GRANTED.** Therefore, the United States' Motion for Summary Judgment on All Claims, **(Ct. Rec. 55)**, is **DENIED AS MOOT.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to all counsel.

**DATED** this 19th day of September, 2005.

s/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2003\0278.rule60.frm